IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Jessie J. Johnston, ) | Civil Action No. 8:05-178-GRA-BHH |
| ) Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB") or supplemental security income benefits ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

On September 19, 2002, the plaintiff filed an application for DIB and SSI alleging disability beginning July 2, 2002. The application was denied initially and on reconsideration. The plaintiff requested a hearing, which was held on March 8, 2004. Following the hearing, at which the plaintiff and his attorney appeared, the administrative

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

law judge considered the case *de novo*, and on May 28, 2004, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on December 15, 2004.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's obesity, mild scoliosis, and knee and back pain are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: to lift a maximum of 10 pounds; he can occasionally lift or carry articles like docket files, ledgers, and small tools. With normal work breaks, he can sit a maximum of 6 hours out of an 8-hour workday, and stand/walk a maximum of 2 hours out of an 8-hour workday. He can never climb ropes or scaffolds. He has no mental or manipulative limitations. He has the exertional capacity for a full range of sedentary work.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

9.  The claimant has a "high school equivalent education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform substantially all of the full range of sedentary work (20 CFR §§ 404.1567 and 416.967).

12. Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, Medical-Vocational Rule 201.28, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged

in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff was born on January 3, 1976 and at the time of the ALJ's decision, he was 28 years old.  (Tr. 48.)   He has a 7th grade education and obtained a GED.  (Tr. 75; 148.)  The plaintiff has prior work experience as a fast food restaurant worker and warehouse worker. (Tr. 148-149.)  He alleges that he became disabled on July 2, 2002 due to severe obesity, high blood pressure, constant back pain, scoliosis, and knee pain (Tr. 126-130).

The plaintiff alleges that the ALJ erred by failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to give adequate weight to the opinion of his treating physician; (2) assessing the plaintiff's credibility; (3) failing to obtain the testimony of a vocational expert; and (4) failing to make a finding with regard to the plaintiff's obesity.

5

*Treating Physician Opinion*

The plaintiff first contends that the ALJ did not give proper weight to the opinion of Dr. David Gammon that the plaintiff's impairments would interfere with his concentration and cause excessive absences from work. In a written statement dated march 8, 2004, Dr. Gammon stated:

> I have evaluated Jessie Johnson. He has several conditions which in combination make it difficult for him to function. First, he has a significant back problem., Second, his massive obesity exacerbates his back problems. He has depression which means his actual pain is more intense and makes it more difficult for him to control his obesity. All things considered, it is going to be difficult for him to attend and concentrate on work on a predictable basis, and is almost certainly going to miss more than 3 days of work a month because of his illness.

(Tr. 124).

The ALJ rejected Dr. Gammon's opinion, finding that his opinion of the plaintiff's "significant back problem" is "not well supported by medically acceptable clinical and laboratory diagnostic techniques, including the results of laboratory studies, physical examinations and x-rays." (Tr. 25)

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). A "medical opinion" is a "judgment[] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment9s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can

produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

From the record, it appears that Dr. Gammon examined the plaintiff on only three occasions. Other than blood pressure readings, pulse and respiratory rates and body weight, Dr. Gammon's progress notes contain no references to objective clinical or laboratory findings (Tr. 121-123). When he first saw the plaintiff on August 20, 2003, Dr. Gammon simply noted the plaintiff reported a history of hypertension, obesity, low back pain and "pain/fluid on knees" and that he had no other complaints. Dr. Gammon prescribed an antihypertensive medication and Clinoril, a non-steroidal anti-inflammatory medication (Tr. 123). On September 22, 2003, Dr. Gammon noted that the plaintiff continued to complain of back pain and that Clinoril had been helpful, but it caused gastrointestinal problems (Tr. 122).

In the third office visit, Dr. Gammon noted that the plaintiff was complaining of mid-back pain after rising from a seated position the previous day, but he had no extremity numbness and no peripheral weakness. Dr. Gammon counseled the plaintiff on his diet and prescribed a diuretic in addition to his other medications. There is no indication that Dr. Gammon diagnosed a problem other than "back pain", and there is no report that the plaintiff was suffering from depression. In addition, Dr. Gammon made no clinical findings concerning muscle spasms, range of motion, tenderness or gait (Tr. 121).

There are reports from other doctors in the record as well. On September 12, 2002, the plaintiff was examined by Dr. Richard Lucarelli, who noted back spasms and decreased range of motion, but no strength, sensory or motor deficits (Tr. 100). The plaintiff was examined by Dr. Imtiaz Khan on January 18, 2003, who noted that the plaintiff had back pain with spasm, but "no obvious lumbosacral dysfunction at this time." (Tr. 119). No other physician ever diagnosed the plaintiff with a "significant back impairment" and no

7

medical source noted any limitations due to his weight. There is simply no reference in the medical record to indicate that the plaintiff suffered from depression and impaired attention and concentration or even that he had sought or received treatment for mental health issues. Moreover, two state agency physicians who reviewed the plaintiff's medical records found that the plaintiff had the capacity to perform medium work (Tr. 109-116).

In short, this court concludes, as outlined above, that there is substantial evidence in the record to support the ALJ's determination to give the opinion of Dr. Gammon less than controlling weight.

***The Plaintiff's Credibility***

The plaintiff further alleges that the ALJ "applied an improper pain standard by requiring that the medical evidence alone account for the severity of [the plaintiff's] pain." Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the intensity, persistence or functionally limiting effect" of the claimant's asserted pain." *Id.* at 594.. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work, must be evaluated." *Id.* at 595. The ALJ's finding on this issue is detailed and thoughtful:

> The claimant has complained of pain. However, I find that the claimant's pain does not cause him to be unable to perform sustained sedentary work. Once an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator

must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

I have considered the interrelation of objective medical and physiological findings and the diagnoses of various examining physicians, as well as the claimant's own subjective complaints of discomfort. I specifically find that the claimant's subjective complaints regarding discomfort are not credible in establishing pain of a "disabling" nature in this case as the record simply does not reveal any frequent, radicular, severely intense pain of such a disabling nature. The record simply does not indicate that the performance of sustained sedentary work activities would either precipitate or aggravate any pain condition to a "disabling degree". The medication list completed by the plaintiff included prescriptions from Dr. Gammon (Lotrel for high blood pressure, Lodrane for fluid in his ears, Amoxicillin for an infection) and the Health Department (INH/Vitamin B^ as a preventative against TB). ... He said he previously took Norco first prescribed in October 2003 by Dr. Gammon for knee and lower back pain. ... Norco is the only pain medication listed, and there is no evidence that this medication has been less than effective in at least partially alleviating the claimant's pain. I note he no longer takes this or any other pain medication. No non-medicative treatment for pain relief has been alleged. The medicative and treatment history of record does not persuade me that the claimant is unable to engage in sedentary exertional activity because of any discomfort condition. In terms of functional restriction and activities of daily living, the claimant stated on September 23, 2002 that it hurts for him to bend over or pick up anything heavy and he could only sit for small amounts of time.

At the hearing, the claimant testified that it hurt to bend over. He could sit for 30 minutes at a time and then had to get up. His concentration was "okay until the pain got too bad." He normally got up at 7:00 am, dressed and got his child up for

> school. He cooked his breakfast and then sat and watched television. He could sit for 30 minutes before needing to change positions.
>
> After considering the claimant's subjective complaints in view of pertinent Fourth Circuit caselaw and Social Security Ruling 95-5p, the undersigned does not find any medical condition which could reasonably be expected to cause the claimant "disabling" pain.

(Tr. 25-26).

The ALJ's credibility finding was proper and supported by the evidence. The ALJ did not require only objective medical evidence of the plaintiff's pain, nor did he find that the plaintiff's back problem could not reasonably be expected to cause any pain. He found that the medical evidence established the existence of a severe impairment. He then evaluated the plaintiff's subjective complaints of pain pursuant to 20 C.F.R. § 404.1529 and concluded that the plaintiff's allegations were not fully credible. In making this determination, the ALJ clearly properly analyzed the plaintiff's credibility under the two-step analysis described in *Craig.* The ALJ clearly discussed his reasons for finding the plaintiff's allegation to be not fully credible, including the lack of pain medication and the absence of limitations imposed by physicians. The finding is supported by substantial evidence, including the absence of a diagnosis by any physician of anything more than back pain, along with objective medical tests such as x-rays of the plaintiff's lumbar spine, which showed normal alignment and normal disc spaces (Tr. 106). In addition, there is no evidence in the record that any physician ever placed any functional limitations on the plaintiff's physical activities.

The ALJ's credibility determination is supported by substantial evidence.

***The Plaintiff's Obesity***

The plaintiff also alleges that the ALJ failed to consider the effects of the plaintiff's obesity[2]. This argument is without merit. The ALJ found that the plaintiff's obesity was a severe impairment and found it was a "contributing source of his low back and knee pain." (Tr. 25). The Social Security Administration recognizes that "[o]besity can cause limitation of function" and that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." Social Security Ruling 02-01p. In limiting the plaintiff to sedentary work, which limits the plaintiff to lifting a maximum of ten pounds and no climbing, the ALJ properly considered the plaintiff's obesity with regard to his residual functional capacity.

***Use of Grids***

The plaintiff further alleges that the ALJ erred in applying the Medical-Vocational Guidelines (the "grids") of the Social Security regulations.

Where a claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level, the ALJ may rely on the grids to satisfy his burden of proof. *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987). The grids are dispositive of whether a claimant is disabled only when the claimant suffers from purely exertional impairments. However, when a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1987). The Fourth Circuit has defined a "nonexertional impairment" as "a limitation that is present whether the claimant is attempting to perfprm the physical requirements of a job or not." *Gory v. Schweiker*, 712 F.2d 929, 930 (4th Cir. 1983).

---

[2] The record indicates that the plaintiff is 6'5" tall and weighs 460 pounds (Tr. 120).

The plaintiff argues that he suffers from nonexertional mental impairments and that therefore the ALJ should not have relied on the grids in making his decision. However, the record contains no evidence that the plaintiff ever complained to any medical professional of depression or any other mental disorder, nor that he ever sought treatment from a mental health professional. In fact, this court has reviewed the entire medical record has found no contemporaneous treatment note indicating that the plaintiff ever presented to a medical professional with symptoms of depression. The only mention of depression is in Dr. Gammon's statement in which he says that the plaintiff "has depression" (Tr. 124). However, as discussed above, the ALJ properly discounted Dr. Gammon's statement because it is not consistent with his own treatment notes and other medical evidence in the record. The mere fact of the plaintiff's acknowledged obesity does not, in and of itself, constitute a nonexertional limitation foreclosing the use of the grids. Accordingly, the ALJ did not err in applying the grids in making his residual functional capacity finding.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court concludes that the ALJ's findings are supported by substantial evidence and recommends the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

*Bruce H. Hendricks*
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

December 28, 2005
Greenville, South Carolina

12